# CONNECTICUT NATIONAL BANK *v.*
# GEORGE W. GAGER ET AL.
## (SC 16682)

Borden, Norcott, Katz, Palmer and Zarella, Js.

Argued December 5, 2002—officially released April 29, 2003

*Susan M. Phillips*, for the appellant (named defendant).

*Daniel J. Krisch*, with whom were *Wesley W. Horton* and *Paul M. Geraghty*, for the appellee (substitute plaintiff).

*Opinion*

ZARELLA, J. The named defendant, George W. Gager,[1] appeals, following our grant of certification, from the judgment of the Appellate Court affirming the judgment of the trial court, which granted the motion of the substitute plaintiff, Anne D. Sanger, to correct the record. The dispositive issue in this appeal is whether the trial court properly granted Sanger's motion to correct the record on the ground that the recorded order of the trial court contained a clerical error. The Appellate Court affirmed the judgment of the trial court, concluding that there was an inadequate record for review. See *Connecticut National Bank* v. *Gager*, 66 Conn. App. 797, 801, 786 A.2d 501 (2001). We conclude that the record was adequate for review but further conclude that the trial court properly granted the motion to correct the record on the ground that the trial court's order contained a clerical error. Accordingly, we affirm the judgment of the Appellate Court, albeit on different grounds.

In 1990, the named plaintiff, Connecticut National Bank,[2] commenced an action against the defendant, among others, seeking to foreclose on certain real property. In July, 1994, the parties entered into a stipulated judgment of strict foreclosure pursuant to which the bank reserved the right to file a motion to open and modify the judgment for the purpose of withdrawing the foreclosure action as to certain designated properties.

---

[1] We hereinafter refer to Gager as the defendant.

[2] We hereinafter refer to Connecticut National Bank as the bank.

In August, 1994, the bank filed a motion to open and modify the judgment of foreclosure for the purpose of withdrawing the foreclosure action as to the designated properties. On September 12, 1994, the court, *Leuba, J.*, held a hearing on the bank's motion. At that hearing, the bank requested that the court open and modify the judgment for the purposes of setting new law days and substituting Sanger as the plaintiff.[3] Furthermore, at the hearing, the bank sought to preserve the terms of the judgment notwithstanding its request in its motion to withdraw the foreclosure action as to the designated properties.[4]

At the close of the hearing, the court issued an order from the bench. The judge's clerk subsequently recorded the order on the last page of the bank's motion. The clerk made several notations on the order, includ-

---

[3] Sanger filed a motion to be substituted as the plaintiff on the date of the hearing on the bank's motion because she had become the holder of the mortgage that was being foreclosed by virtue of an assignment that had occurred on September 12, 1994. The court, *Leuba, J.*, granted Sanger's motion.

[4] The following colloquy took place between the bank's attorney and the court at the September 12, 1994 hearing on the bank's motion to open and modify the judgment of foreclosure.

"[The Bank's Attorney]: Your Honor may recall that two weeks ago, I was before Your Honor on a motion to open and modify which is indeed calendared. At that time, the matter was marked over to today.

"Since the actual filing of the motion to open, there's been a change in the facts, more particularly set forth in [the] motion [of Sanger] looking to be made a substituted party plaintiff. *For purposes of my motion, Your Honor, I would ask the court to reopen the judgment, which was a stipulated judgment under date of July 12, 1994, [to] vacate the judgment with regards to the law day, [to] allow the substitution of [Sanger] as [a] party plaintiff, and then [to] set new law days.*

"We do have an agreement with regards to the law days, Your Honor.

"The Court: What's the agreement?

"[The Bank's Attorney]: The agreement is that we would ask the court to set law days commencing October [11, 1994]. *All of the terms of the judgment [are] to remain the same.*

"The Court: Is that the agreement?

"[Sanger's Attorney]: That is the agreement, Your Honor.

"The Court: *All right, so ordered.*" (Emphasis added.)

ing a circle around the word "GRANTED" and a line through the word "DENIED." In addition, the clerk wrote in the following: "The new law day is 10-11-94. All other terms of the judgment shall remain the same . . . ." Finally, the clerk wrote in "(*Leuba, J.*)" next to the words, "BY THE COURT," and the clerk signed his name immediately below, on the signature line.

On August 7, 2000, Sanger filed a motion to correct the record in which she claimed that the trial court's order contained a scrivener's error and that that error should be corrected to reflect the fact that the court had intended to set new law days following the substitution of Sanger as the plaintiff rather than to approve the withdrawal of the foreclosure action. At the conclusion of arguments on Sanger's motion to correct the record, the court, *Hon. D. Michael Hurley*, judge trial referee, granted Sanger's motion but did not issue a written memorandum of decision. Thereafter, the defendant filed a motion for articulation. The court stated in its articulation that "[t]he motion to correct was granted because all it did was correct a scrivener's error of the clerk . . . . The correction merely restated the correct order of the court." Thereafter, the defendant appealed to the Appellate Court.

On appeal to the Appellate Court, the defendant claimed that the trial court improperly determined that there was a scrivener's error in the September, 1994 order. *Connecticut National Bank* v. *Gager*, supra, 66 Conn. App. 799. The Appellate Court declined to review the defendant's claim, however, on the basis of its determination that there was an inadequate record for review. See id., 801. Specifically, the Appellate Court stated that, "although the defendant requested that the trial court articulate the basis for its decision, the court merely responded that '[t]he motion to correct was granted because all it did was correct a scrivener's error of the clerk . . . .' It did not articulate the reasoning used in reaching its conclusion. Moreover, the defen-

dant failed to avail himself of the procedural vehicles that might have remedied this deficiency in the record . . . because he did not request a further articulation pursuant to Practice Book § 66-5 and did not file a motion for review of the trial court's articulation. . . . For th[e] court to determine how the trial court arrived at its decision without the benefit of a more detailed explanation would be speculative." (Citations omitted.) Id. The Appellate Court affirmed the judgment of the trial court.

We granted the defendant's petition for certification to appeal limited to the issue of whether the Appellate Court properly declined to review the defendant's claim on the basis of an inadequate record. *Connecticut National Bank* v. *Gager*, 259 Conn. 922, 792 A.2d 853 (2002). Although we conclude that there was an adequate record for review, we further conclude that the trial court properly granted the motion to correct inasmuch as the notations that the clerk made in the September, 1994 order were inconsistent with the actual order that the trial court issued from the bench.[5]

As a threshold matter, we address our standard of review. "The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our

---

[5] Although the issue of whether the trial court properly granted the motion to correct the record was not certified for appeal, we note that Sanger and the defendant briefed that issue as an alternative ground on which to base our decision. In addition, Sanger and the defendant both agreed in their respective briefs and at oral argument that the Appellate Court improperly had concluded that the record was inadequate for review. Consequently, we invoke our supervisory authority over appellate proceedings to review directly the decision of the trial court to grant Sanger's motion to correct the record. See, e.g., *Ahneman* v. *Ahneman*, 243 Conn. 471, 481–82, 706 A.2d 960 (1998); *Matza* v. *Matza*, 226 Conn. 166, 188–89, 627 A.2d 414 (1993).

review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Cavanaugh* v. *Newtown Bridle Lands Assn., Inc.*, 261 Conn. 464, 470, 803 A.2d 305 (2002). In the present case, the trial court's decision to grant the motion to correct depended on a factual finding regarding the existence of an inconsistency between the actual order issued by the court and the order recorded by the clerk. Accordingly, our review is limited to deciding whether such a finding was clearly erroneous.

We begin by reviewing the law concerning the correction of judgments. There is a distinction between corrections that change the substance of a court's disposition and corrections that merely remedy clerical errors. See *Maguire* v. *Maguire*, 222 Conn. 32, 39–40, 608 A.2d 79 (1992). "[T]he distinction [is] that mere clerical errors may be corrected at any time even after the end of the term. . . . A clerical error does not challenge the court's ability to reach the conclusion that it did reach, but involves the failure to preserve or correctly represent in the record the actual decision of the court. . . . In other words, it is clerical error if the judgment as recorded fails to agree with the judgment in fact rendered . . . ." (Citations omitted; internal quotation marks omitted.) Id. Thus, a motion to correct properly is granted when the moving party demonstrates that the recorded judgment is inconsistent with the actual judgment. See id., 40. A finding of an inconsistency between the recorded judgment and the actual judgment necessarily requires that the actual judgment be unambiguous and clearly ascertainable.

The crux of the defendant's claim is that the trial court improperly granted the motion to correct because Sanger had failed to demonstrate that the order recorded by the clerk was inconsistent with the order

that the trial court actually issued. Specifically, the defendant claims that the trial court could not have determined whether the actual order and recorded order were inconsistent because the actual order was ambiguous and cannot be determined fairly from the transcript. We disagree.

In the present case, the bank originally filed a motion to open and modify the judgment to withdraw the foreclosure action as to three parcels of real property. Nevertheless, it is clear from the transcript of the September 12, 1994 hearing on the bank's motion that, at the time of the hearing, the bank no longer wanted to withdraw the foreclosure action as to the three parcels. Rather, the bank sought to set new law days and to substitute Sanger as the plaintiff. See footnote 4 of this opinion. At the hearing on its motion to open and modify the judgment, the bank explicitly requested that the court preserve all of the terms of the judgment of foreclosure. See id. It is also clear from the transcript that the trial court understood this to be the scope of the bank's request for relief and, accordingly, granted the bank's motion to open and modify the judgment for the limited purposes of setting new law days and substituting Sanger as the plaintiff. See id.

The recorded order of the trial court, however, which was signed by the clerk, stated: "The foregoing motion having been presented to the court, it is hereby ordered: GRANTED . . . ." Additionally, the clerk wrote: "The new law day is 10-11-94. All other terms of the judgment shall remain the same . . . ." Thus, to the extent that the recorded order, in which the word "GRANTED" was circled, reasonably may be regarded as having the effect of withdrawing the plaintiff's foreclosure action as to the designated properties, which was the relief that the bank requested in its written motion, such a disposition is clearly inconsistent with the actual relief

requested by the bank at the hearing on its motion and with the actual order issued by the trial court.[6]

We conclude, therefore, that the trial court's finding that the actual order issued by the trial court was inconsistent with the order recorded by the clerk was not clearly erroneous. Consequently, the trial court properly granted the plaintiff's motion to correct the record.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

---

[6] We note that there are two logical interpretations of the order recorded by the clerk. The first interpretation, which we explained in the text of this opinion, is that the clerk's circling of the word "GRANTED" had the effect of withdrawing the foreclosure action as to the properties designated in the bank's motion to open and modify the judgment. Under this interpretation, the recorded order is inconsistent with the order that the trial court actually issued and, under such circumstances, the motion to correct properly was granted. Another plausible interpretation, however, harmonizes the order actually issued by the court and the order recorded by the clerk. The motion before the court was a motion to open and modify the judgment of foreclosure. The relief that the bank requested in its written motion, however, was to withdraw the foreclosure action as to the designated properties. Thus, the recorded order, in which the word "GRANTED" was circled, could be interpreted as merely having the effect of granting the motion to open and modify the judgment rather than having the effect of granting the relief requested. The clerk's handwritten notes in the recorded order, however, indicated that the court granted the actual relief sought, which was to change the law days and to preserve all other terms of the judgment. We acknowledge that if the recorded order were interpreted in such a manner, it would be consistent with the order actually issued by the court, and, under such an interpretation, the granting of the motion to correct would have been improper because no correction was necessary. Under such circumstances, the court's decision to grant the motion to correct would

constitute harmless error, however, inasmuch as the corrected order would accurately reflect the actual order.