PREMIER CAPITAL, INC. *v.* DAVID S.
GROSSMAN ET AL.
(AC 26230)

Bishop, DiPentima and Hennessy, Js.

Argued October 11—officially released December 20, 2005

*David S. Grossman*, for the appellants (defendants).

*Neal L. Moskow*, with whom, on the brief, was *Deborah M. Garskof*, for the appellee (plaintiff).

*Opinion*

HENNESSY, J. The defendants, David S. Grossman and Myrna S. Grossman, appeal from the judgment of the trial court awarding the plaintiff, Premier Capital, Inc., $10,000 in appellate attorney's fees resulting from

postjudgment appeals filed by both parties. On appeal, the defendants claim that (1) the appellate attorney's fees awarded were not authorized by contract, (2) if such fees were authorized by contract, the court abused its discretion by awarding attorney's fees when there was insufficient evidence to determine a reasonable amount and (3) it is improper to award appellate attorney's fees "where both parties can justifiably claim [to have] prevailed on a mix of issues presented to the [A]ppellate [C]ourt." We disagree and affirm the judgment of the trial court.

The following facts and procedural history, as set forth in *Premier Capital, Inc.* v. *Grossman*, 68 Conn. App. 51, 789 A.2d 565, cert. denied, 260 Conn. 917, 797 A.2d 514 (2002) (*Premier I*), are relevant to our discussion. "The plaintiff commenced this action against the defendants for nonpayment of a debt. The plaintiff's amended complaint set out eight numbered paragraphs in which it alleged that, as assignee of a note executed by the defendants, it was entitled to the principal and interest due under the note along with attorney's fees and costs incurred in bringing this action to enforce the note. In response to the plaintiff's complaint, the defendants filed an answer and two special defenses. They also filed counterclaims for setoff and recoupment. In their counterclaim for setoff, the defendants adopted, in their entirety, the eight paragraphs of the plaintiff's complaint and alleged those eight paragraphs as the first eight paragraphs of their own claim for setoff.

"Pursuant to Practice Book § 23-53, the matter was referred to [a] fact finder, who conducted a hearing and submitted a written report containing factual findings and recommendations as to judgment in accordance with Practice Book § 23-56. The relevant facts contained in that report are as follows. On April 14, 1992, the defendants executed a $10,000 note made

payable to Brookfield Bank (bank), which note was payable on demand. As collateral for the note, the defendants gave the bank a security interest in certain shares of General Electric stock, which shares were held solely in the name of Myrna Grossman. Pursuant to the terms of the note, the defendants promised to pay interest on the $10,000 principal amount borrowed at an initial rate of 9 percent per annum until May 1, 1992, at which time interest was payable at a variable rate. They also promised to pay any attorney's fees and costs that the bank might incur in enforcing the note in the event of a default.

"On or about May 8, 1992, the bank failed and the Federal Deposit Insurance Corporation (FDIC) took possession of the assets of the bank, including the defendants' note and the collateral that secured it. The defendants failed to make any principal or interest payments on the note. Consequently, on April 21, 1994, an account officer of the FDIC wrote a letter to the defendants, informing them that, as of that date, the total amount due and owing under the note was $11,673.42, of which $10,000 represented principal and $1673.42 represented interest. The letter also requested that Myrna Grossman sign and that the defendants forward blank stock powers to the FDIC, thereby enabling the FDIC to sell the stock and apply the proceeds of that sale to the defendants' outstanding debt. In response to that letter, David Grossman requested that the FDIC provide a detailed account of the certificate numbers and the number of shares represented by each certificate securing the note. On June 24, 1994, the FDIC provided the defendants with the applicable stock certificate numbers as well as the number of shares that each certificate represented, which totaled 123 shares, together with photocopies of the certificates. The FDIC again requested that Myrna Grossman sign the corresponding stock powers and that the defendants forward

those documents to the FDIC. The defendants did not do so.

"On June 26, 1996, the FDIC assigned the note, together with the collateral, to the plaintiff. On August 1, 1996, the plaintiff sent a certified letter to the defendants, demanding payment of the outstanding balance due on the note, which as of that date amounted to $14,409.33 in principal and interest. The defendants have never made any payments on the debt.

"The fact finder found that as of March 20, 2000, the total amount owing to the plaintiff on the note was $18,100.20 and that the plaintiff was entitled to $6375 in reasonable attorney's fees, plus costs associated with the litigation. The fact finder further found that the defendants failed to meet the burden of proving their special defenses and failed to present evidence that was sufficient to prove their counterclaims for setoff and recoupment. Accordingly, the fact finder recommended that the court render judgment for the plaintiff in the amount of $18,100.20 plus attorney's fees and costs. The fact finder also recommended that the court render judgment in favor of the plaintiff on the defendants' claims for setoff and recoupment.

"Pursuant to Practice Book § 23-57, the defendants filed an objection to the court's acceptance of the fact finder's report, claiming, inter alia, that (1) the computer generated record that the plaintiff produced at trial was inadmissible hearsay and it was, therefore, improperly admitted as evidence of the debt, and (2) the fact finder improperly failed to find that the defendants had proved their claim for recoupment.

"After reviewing the fact finder's findings of fact, the court concluded that the computer record adduced by the plaintiff as evidence of the defendants' debt was properly admitted under General Statutes § 52-180 as an exception to the rule against admitting hearsay evi-

dence. Further, with regard to the defendants' recoupment claim, the court concluded that the defendants provided no authority that supported their claim that they were entitled to a credit for the value of the stock that secured the note. The court also noted that it was the defendants' failure to sign and return the stock powers that hampered the FDIC's efforts to sell the stock and to apply the proceeds to the outstanding debt. Accordingly, it concluded that nothing in the record required findings or conclusions contrary to those made by the fact finder. The court, therefore, accepted the fact finder's findings and recommendations, and rendered judgment in favor of the plaintiff in the amount of $18,100.20, plus attorney's fees of $6375, plus costs. It also rendered judgment in favor of the plaintiff on the defendants' claim for recoupment. The defendants appealed." Id., 52–56.

The following additional facts and procedural history are relevant to our resolution of this appeal. On the appeal, the defendants claimed, in part, that the court improperly had accepted the fact finder's report because (1) the fact finder inappropriately allowed a computer generated record to be admitted as evidence of the defendants' debt and (2) the findings of fact of the fact finder relating to whether the defendants were entitled to prevail on their counterclaim for recoupment were inconsistent. Id., 52. This court reversed the judgment of the trial court on the issue of recoupment and remanded the case for further proceedings to determine the appropriate amount of the credit to be offset. Id., 60.

On remand, the trial court concluded that "the correct and appropriate date for a determination of the valuation of [General Electric stock] must be the date of the unequivocal demand for payment of the debt secured by the note and the pledged [stock]." (Internal quotation marks omitted.) *Premier Capital, Inc.* v. *Grossman*, 82 Conn. App. 390, 392, 845 A.2d 442, cert. denied, 271

Conn. 901, 859 A.2d 564 (2004) (*Premier II*). The court then found that August 1, 1996, the date that the plaintiff had sent a letter to the defendants demanding payment, was the correct date for the determination of the appropriate amount of credit to be offset against the debt. Id., 392–93. The plaintiff appealed, claiming that the court had used the incorrect date to determine the value of the shares. Id., 391. The defendants cross appealed. Id. This court affirmed the judgment of the trial court. Id., 396.

On October 7, 2004, the plaintiff filed a motion to recover $20,325 in appellate attorney's fees and $926.12 in costs associated with *Premier I* and *Premier II*. An affidavit signed by the plaintiff's attorney, Neal L. Moskow, was attached to the motion. The defendants filed an objection to the motion. After oral argument, but without testimony, the court awarded the plaintiff $10,000 in appellate attorney's fees and costs by way of a written order on January 10, 2005. On January 19, 2005, the defendants filed a request for articulation. The request was denied. This appeal followed. Additional facts will be set forth as necessary.

On appeal, the defendants claim that (1) the appellate attorney's fees awarded were not authorized by the contract, (2) if such fees were authorized by the contract, the court abused its discretion by awarding attorney's fees when there was insufficient evidence to determine a reasonable amount and (3) it is improper to award appellate attorney's fees "where both parties can justifiably claim [to have] prevailed on a mix of issues presented to the [A]ppellate [C]ourt."

As a preliminary matter, we identify the legal principles and the standard of review relevant to our discussion. The law governing the award of appellate attorney's fees is well established. A prevailing party may recover such fees only if an appellate fee award

is authorized by either statute or contract. See *Gionfriddo* v. *Avis Rent A Car System, Inc.*, 192 Conn. 280, 297, 472 A.2d 306 (1984); *Neiditz* v. *Housing Authority*, 42 Conn. App. 409, 413, 679 A.2d 987 (1996). The decision whether to award such fees rests in the exercise of discretion by the trial court. *Torres* v. *Waterbury*, 30 Conn. App. 620, 626–27, 621 A.2d 764 (1993). That standard applies both to the amount of fees awarded and to the determination of the factual predicate justifying the award. *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 252, 828 A.2d 64 (2003).

The defendants first claim that the appellate attorney's fees awarded were not authorized by the contract. They specifically argue that the provision in the contract requiring the defendants to pay the plaintiff's collection costs, including attorney's fees, does not include appellate attorney's fees. That argument is without merit. Although the defendants maintain that the issue of postjudgment appellate attorney's fees arising from contractual language is one of first impression, our Supreme Court has previously held that a party may recover postjudgment appellate attorney's fees when authorized by contract. *Gionfriddo* v. *Avis Rent A Car System, Inc.*, supra, 192 Conn. 297. We therefore look to the language of the note to determine if it authorizes the payment of appellate attorney's fees.

The relevant provision of the note states: "If I'm in default under this Note, and the full amount is due and payable, I agree to pay your collection costs (including, for example, costs of repossession, foreclosure and sale), as allowed by law. If you bring a lawsuit to collect, I will pay you your attorney's fees and court costs as allowed by law." It is clear from the language that the contract authorizes all attorney's fees "as allowed by law." As previously stated, appellate attorney's fees are recoverable when authorized by contract. Because appellate attorney's fees are allowed by law, and the

contract authorizes all attorney's fees allowed by law, we conclude that the provision of the note requiring the defendants to pay the plaintiff's collection costs, including attorney's fees, includes appellate attorney's fees.

The defendants next argue that if such fees are authorized by the contract, the court abused its discretion by awarding attorney's fees when there was insufficient evidence to determine a reasonable amount. Due to an inadequate record, we cannot review that claim. It is well settled that "the reasonableness of attorney's fees and costs must be proven by an *appropriate evidentiary showing*." (Emphasis in original; internal quotation marks omitted.) *Smith* v. *Snyder*, 267 Conn. 456, 471, 839 A.2d 589 (2004). An evidentiary hearing is only one of many methods to satisfy this requirement. See *Petronella* v. *Venture Partners, Ltd.*, 60 Conn. App. 205, 216, 758 A.2d 869 (2000), appeal dismissed, 258 Conn. 453, 782 A.2d 97 (2001). A trial court may "assess the reasonableness of the fees requested using any number of factors, including its general knowledge of the case, sworn affidavits or other testimony, itemized bills, and the like." *Smith* v. *Snyder*, supra, 480.

In the present case, we do not know the factual findings on which the court based its award. Although the defendants filed a motion for articulation asking the court to set forth the factual basis for its award, the motion was denied. The defendants, however, did not file a motion for review. See Practice Book § 66-6. The court, having access to both appellate files, could have made numerous factual findings. For us to say that those factual findings were clearly erroneous without knowing what those factual findings were would be pure speculation. As a result of the defendants' failure to provide this court with a proper record,[1] we cannot

---

[1] "One specific purpose of a motion for articulation of the factual basis of a trial court's decision is to clarify an ambiguity or incompleteness in the legal reasoning of the trial court in reaching its decision. . . . Where,

review their claim. See *Federal Deposit Ins. Corp.* v. *Owen*, 88 Conn. App. 806, 816, 873 A.2d 1003, cert. denied, 275 Conn. 902, 882 A.2d 670 (2005).

Last, the defendants argue that it is improper to award appellate attorney's fees "in situations where both parties can justifiably claim [to have] prevailed on a mix of issues presented to the [A]ppellate [C]ourt." Although the defendants are correct that attorney's fees generally are awarded only to prevailing parties, their definition of a prevailing party is incorrect. "To be a prevailing party does not depend upon the degree of success at different stages of the suit; but upon whether at the end of the suit or other proceeding, the party, who has made a claim against the other, has successfully maintained it. If he has, he is the prevailing party." Ballentine's Law Dictionary (3d Ed. 1969). Similarly, this court recently stated that "costs may be awarded to a successful party-plaintiff as the prevailing party where there is success on the merits of the case although not to the extent of the plaintiff's original contention, or where the plaintiff is not awarded the entire claim. A party need not prevail on all issues to justify a full award of costs, and it has been held that if the prevailing party obtains judgment on even a fraction of the claims advanced, or is awarded only nominal damages, the party may nevertheless be regarded as the prevailing party and thus entitled to an award of costs." (Internal quotation marks omitted.) *Russell* v. *Russell*, 91 Conn. App. 619, 631, 882 A.2d 98 (2005). Under either definition, the plaintiff is clearly the pre-

however, a trial court fails to answer a motion for articulation or does so incompletely, the appellant should seek a further articulation. . . . When a party is dissatisfied with the trial court's response to a motion for articulation, he [or she] may, and indeed under appropriate circumstances he [or she] must, seek immediate appeal of the rectification memorandum to this court via a motion for review." (Citation omitted; internal quotation marks omitted.) *Connecticut National Bank* v. *Gager*, 66 Conn. App. 797, 800–801, 786 A.2d 501 (2001), aff'd, 263 Conn. 321, 820 A.2d 1004 (2003).

vailing party because it successfully maintained its action against the defendants.

In sum, the appellate attorney's fees awarded were authorized by the contract. Due to the defendants' failure to provide an adequate record, their claim that the court abused its discretion by awarding attorney's fees when there was insufficient evidence to determine a reasonable amount is not reviewable. Finally, although the defendants can claim that they prevailed on a mix of issues presented to this court in *Premier I* and *Premier II*, the plaintiff is the prevailing party because it successfully maintained its claim against the defendants. Accordingly, we conclude that the court did not abuse its discretion in awarding $10,000 in appellate attorney's fees to the plaintiff.

The judgment is affirmed.

In this opinion the other judges concurred.