## GEORGE W. GAGER *v.* ANNE D. SANGER
## (AC 26385)

Schaller, DiPentima and Harper, Js.

 

Argued February 9—officially released May 30, 2006

*Andrew Brand*, with whom, on the brief, was *Eric Callahan*, for the appellant (plaintiff).

*Paul M. Geraghty*, with whom was *Michael S. Bonnano*, for the appellee (defendant).

### Opinion

DiPENTIMA, J. The plaintiff, George W. Gager, appeals from the judgment of the trial court rendered in favor of the defendant, Anne D. Sanger, after it granted her motion for summary judgment. On appeal, the plaintiff claims that the court improperly (1) concluded that the doctrine of equitable tolling did not apply and (2) rendered summary judgment on his claims of (a) resulting and constructive trust and (b) conversion. We affirm the judgment of the trial court.

The following facts and procedural history are undisputed. In 1990, the Connecticut National Bank (bank) commenced a foreclosure action against the plaintiff involving property in Bozrah. In July, 1994, the plaintiff

and the bank entered into a stipulated judgment of strict foreclosure pursuant to which the bank reserved the right to file a motion to open and to modify the judgment. In August, 1994, the bank moved to open the judgment, and on September 12, 1994, the court, *Leuba, J.*, heard argument on the motion at short calendar.[1] The defendant filed a motion to be substituted for the bank on the date of the hearing because she had become the holder of the mortgage that was being foreclosed by virtue of an assignment.[2] The court orally issued an order granting the defendant's motion and setting new law days commencing October 11, 1994. "The judge's clerk subsequently recorded the order on the last page of the bank's motion. The clerk made several notations on the order, including a circle around the word 'GRANTED' and a line through the word 'DENIED.' In addition, the clerk wrote in the following: 'The new law day is 10-11-94. All other terms of the judgment shall remain the same . . . .' Finally, the clerk wrote in '(*Leuba, J.*)' next to the words, 'BY THE COURT,' and the clerk signed his name immediately below, on the signature line." (Emphasis in original.) *Connecticut National Bank* v. *Gager*, 263 Conn. 321, 323–24, 820 A.2d 1004 (2003).

In March, 1997, the defendant wrote to the plaintiff that she intended to sell a portion of the subject property. In August, 1997, the plaintiff filed an action (trust

___

[1] Neither the plaintiff nor his attorney were present at the hearing.

[2] The motivation for the substitution is disputed by the parties. The plaintiff claims that the defendant had made "an express declaration of trust with the promise that she would acquire, hold and continue to hold certain real estate . . . in a fiduciary relationship, as trustee for the plaintiff . . . whereby legal title to said real estate would be held by the defendant, in trust, for the express benefit of the plaintiff, and thence conveyed to the plaintiff by the defendant on demand by the plaintiff." The defendant denies this allegation and claims instead that, despite previous conversations with the plaintiff, she independently purchased the bank's interest in the judgment and completed the foreclosure.

action) against the defendant for breach of the alleged trust agreement that the plaintiff had made with the defendant. See footnote 2. The complaint alleged breaches of voluntary express trust, resulting trust and constructive trust on the basis of the defendant's failure to convey the subject property to the plaintiff. In June, 2000, very shortly before the scheduled date for trial, the plaintiff withdrew the trust action after reading the clerk's notation in the foreclosure file. As noted by the court in this action, the plaintiff apparently believed that "the court records established that the bank had withdrawn the foreclosure action involving the subject property, that he remained the owner of the property and that the property had never been validly transferred to [the defendant]."

In August, 2000, the defendant filed a motion to correct the record to reflect that there had not been a withdrawal of the foreclosure action, but rather that the court had opened the judgment to extend the law days and to substitute the defendant for the bank. The court, *Hon. D. Michael Hurley*, judge trial referee, granted the motion to correct. The plaintiff appealed to this court; *Connecticut National Bank* v. *Gager*, 66 Conn. App. 797, 786 A.2d 501 (2001), aff'd, 263 Conn. 321, 820 A.2d 1004 (2003); which affirmed the trial court's decision on the basis of the inadequacy of the appellate record. On April 29, 2003, our Supreme Court affirmed the result on the ground that the court had decided the motion to correct properly. *Connecticut National Bank* v. *Gager*, supra, 263 Conn. 321.

On June 26, 2003, the plaintiff initiated the present action against the defendant and, on October 15, 2004, the defendant filed a motion for summary judgment, asserting that the claims raised in the first three counts of the complaint were barred by the applicable statute of limitations and that the last count would fail if sum-

mary judgment were rendered on the first three.[3] On February 16, 2005, the court, *Schuman, J.*, held a hearing and, on February 25, 2005, issued a memorandum of decision granting the motion. This appeal followed.

We first set forth the well settled standard of review. "Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . .

"[A]s a general rule, summary judgment may be rendered where the claim is barred by the statute of limitations." (Internal quotation marks omitted.) *Lind-Larsen* v. *Fleet National Bank of Connecticut*, 84 Conn. App. 1, 8, 852 A.2d 799, cert. denied, 271 Conn. 940, 861 A.2d 514 (2004). Because the matter of whether a party's claim is barred by the statute of limitations is a question of law, we review the plaintiff's claim de novo. See id. "On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) Id., 8–9.

I

The plaintiff's first claim centers on whether the court improperly failed to apply the doctrine of equitable tolling to toll the statute of limitations period for his claim of breach of express voluntary trust. Specifically, the plaintiff contends that the court improperly granted

---

[3] The present complaint essentially differs from the plaintiff's prior complaint only in that a fourth count was added claiming conversion of the property due to the defendant's having authorized the removal of sand, stone, gravel and topsoil from the plaintiff's property.

the defendant's motion for summary judgment because the pendency of the action on the motion to correct the record equitably tolled the statute of limitations in this action against the defendant.[4] We disagree.

There is no significant dispute that the last possible day for the breach to have occurred was in March, 1997, when the defendant wrote to the plaintiff that she planned to sell a portion of the subject property. Even under the statute of limitations most favorable to the plaintiff, General Statutes § 52-576, the six year statute applicable to an executed contract, the plaintiff would have had to have filed the present action by March, 2003. Because the plaintiff served the defendant on June 29, 2003, more than two months beyond the six year statute of limitations, only if the statute were tolled would the claim be valid.[5]

---

[4] We note that the doctrine of equitable tolling generally has been used in the Connecticut appellate courts in the context of administrative employment discrimination complaints. See, e.g., *State* v. *Commission on Human Rights & Opportunities*, 211 Conn. 464, 475, 559 A.2d 1120 (1989) ("principle of the 'equitable tolling' of limitations periods based on an employer's continuing acts of discrimination is well established in the federal courts"); *Williams* v. *Commission on Human Rights & Opportunities*, 67 Conn. App. 316, 329, 786 A.2d 1283 (2001) ("[u]sually, in employment discrimination cases, time limits will not be tolled absent some behavior of the employer designed to delay the filing of the complaint or fraud"). The court here analogized the doctrine of equitable tolling in those cases to the doctrine of equitable estoppel. See *Morris* v. *Costa*, 174 Conn. 592, 599, 392 A.2d 468 (1978) ("[c]ourts, applying equitable principles, have laid down the doctrine of equitable estoppel by which a defendant may be estopped by his conduct from asserting defenses such as the statute of limitations"). We find unavailing the plaintiff's assertion that "[t]he court's implied conclusion . . . that the equitable tolling doctrine does not apply in the case at hand because the plaintiff cannot allege equitable estoppel . . . is not legally or logically correct or is [un]supported by the facts." The proper course of action for the plaintiff to have taken to clarify the court's "implied conclusion" was to have filed a motion for articulation. See *Cadlerock Properties Joint Venture, L.P.* v. *Commissioner of Environmental Protection*, 253 Conn. 661, 674–75, 757 A.2d 1 (2000), cert. denied, 531 U.S. 1148, 121 S. Ct. 1089, 148 L. Ed. 2d 963 (2001).

[5] The plaintiff included the additional claim that the court improperly determined that there was no genuine issue of material fact. He avers that

"The purpose of the time limitation for bringing complaints is to provide an opportunity for conciliation and investigation, including the preservation of evidence, while the complaint is still fresh . . . ." *Williams* v. *Commission on Human Rights & Opportunities*, 67 Conn. App. 316, 328, 786 A.2d 1283 (2001). "The tolling of a statute of limitations may potentially overcome a statute of limitations defense. When a statute of limitations is tolled, it does not run and the time during which the statute is tolled is considered, in effect, as not having occurred. Therefore, if a statute in a particular case is tolled, it is as if the statute commenced on a later date." A. Levy, Solving Statute of Limitations Problems (1987) § 5.14, p. 195. The doctrine of equitable tolling applies in certain situations to excuse untimeliness in filing a complaint. See *Williams* v. *Commission on Human Rights & Opportunities*, 257 Conn. 258, 284, 777 A.2d 645 (2001) ("complaint that is not filed within the mandatory time requirement is dismissible unless waiver, consent, or some other compelling equitable tolling doctrine applies"), on remand, 67 Conn. App. 316, 786 A.2d 1283 (2001).

The plaintiff claims that he could not have brought the action while the appeal on the motion to correct the record was pending. He cites *Fontanella* v. *Marcucci*, 89 Conn. App. 690, 877 A.2d 828, cert. granted on other grounds, 275 Conn. 907, 882 A.2d 670 (2005) (appeal withdrawn March 8, 2006), for the proposition that "if the prior action does prevent enforcement of the remedy sought in the later action, then the pendency of the prior action can toll the statute of limitations in the

because there was a dispute over whether the trust was executory or executed, and therefore whether General Statutes §§ 52-581 or 52-576 applied, there was a genuine issue of material fact that should have precluded the granting of summary judgment. Because the court applied § 52-576, the statute of limitations period most favorable to the plaintiff, and still determined that the plaintiff's claim did not fall within the statute of limitations period, there is no genuine issue of material fact, and the plaintiff's claim fails.

later action." Id., 700. The plaintiff claims that because the outcome of *Connecticut National Bank* v. *Gager* would be dispositive of the issue of legal title to the subject property, it would have been improper and a waste of judicial resources for him to have brought the action against the defendant because it might have been moot. We disagree. The proposition from *Fontanella*, a legal malpractice action in which this court held that the statute of limitations was tolled, does not apply to the facts of this case.

Although neither the plaintiff nor his attorney were present at the hearing on September 12, 1994, which resulted in the scrivener's error, the plaintiff did not take any steps to discover the reason for the blatant inconsistency. He originally had filed the action in 1997, apparently believing that the defendant had been substituted for the bank, and he maintained the action for three years before withdrawing the complaint on the eve of trial. It is unfathomable for the plaintiff to have believed that the bank withdrew its foreclosure action against him without some form of consideration in return, and he requested no transcript of the proceedings, which would have clarified the judge's order.[6]

---

[6] As our Supreme Court observed, the following colloquy took place at the September 12, 1994 hearing:

"[The Bank's Attorney]: Your Honor may recall that two weeks ago, I was before Your Honor on a motion to open and modify which is indeed calendared. At that time, the matter was marked over to today.

"Since the actual filing of the motion to open, there's been a change in the facts, more particularly set forth in [the] motion [of Sanger] looking to be made a substituted party plaintiff. *For purposes of my motion, Your Honor, I would ask the court to reopen the judgment, which was a stipulated judgment under date of July 12, 1994, [to] vacate the judgment with regards to the law day, [to] allow the substitution of [Sanger] as [a] party plaintiff, and then [to] set new law days.*

"We do have an agreement with regards to the law days, Your Honor.

"The Court: What's the agreement?

"[The Bank's Attorney]: The agreement is that we would ask the court to set law days commencing October [11, 1994]. *All of the terms of the judgment [are] to remain the same.*

"The Court: Is that the agreement?

We further agree with the court's reasoning that "[e]ven if the plaintiff believed that the transcript was not so clear, or that the clerk's endorsement in the file cast doubt on its meaning, the fact remains that Judge Hurley essentially concluded that the result of these proceedings was in fact clear and thereby granted the motion to correct. The trial court's judgment is presumptively correct. . . . Once the trial court ruled, there was no need for any additional information. The plaintiff cannot rely on the opposite and erroneous presumption that the trial court was wrong and then argue that he is entitled to equitable relief due to such reliance." (Citation omitted.) See *Brookfield* v. *Candlewood Shores Estates, Inc.*, 201 Conn. 1, 7, 513 A.2d 1218 (1986) ("correctness of a judgment of a court of general jurisdiction is presumed in the absence of evidence to the contrary"); *Doyle* v. *Abbenante*, 89 Conn. App. 658, 665–66, 875 A.2d 558 ("trial court's ruling is entitled to the reasonable presumption that it is correct unless the party challenging the ruling has satisfied his burden of demonstrating the contrary"), cert. denied, 276 Conn. 911, 886 A.2d 425 (2005).

Instead of requesting a stay in order to clarify the record, or concurrently filing the claim while pursuing the appeal, the plaintiff simply waited for the results. The plaintiff argues in his appellate brief that "despite his due diligence, he was unable to obtain vital information bearing on his claim against the defendant for breach of trust until after April 29, 2003." The record does not reveal such due diligence but instead reveals that the plaintiff chose a legal tactic that proved ineffective while letting the statute of limitations run. The court correctly concluded that the facts in this case do

"[Sanger's Attorney]: That is the agreement, Your Honor.

"The Court: *All right, so ordered.*" (Emphasis in original; internal quotation marks omitted.) *Connecticut National Bank* v. *Gager*, supra, 263 Conn. 323 n.4.

not warrant the application of the doctrine of equitable tolling. Accordingly, the plaintiff's first claim fails.

## II

The plaintiff further claims that the court improperly rendered summary judgment as to his second and third counts, which alleged breach of resulting and constructive trusts. The plaintiff alleges that, even if the statute of limitations were applicable to the express trust claim, equity mandates that any statute of limitations period applicable to the implied trust claims be equitably tolled. We disagree.

The plaintiff cites *Dunham* v. *Dunham*, 204 Conn. 303, 528 A.2d 1123 (1987), overruled in part on other grounds by *Santopietro* v. *New Haven*, 239 Conn. 207, 213 n.8, 682 A.2d 106 (1996), for the proposition that, in a particular complaint that involves both legal and equitable claims, a court is not obligated to apply the legal statute of limitations period to the equitable claims. "[I]n an equitable proceeding, a court *may* provide a remedy even though the governing statute of limitations has expired . . . . Although courts in equitable proceedings often look by analogy to the statute of limitations to determine whether, in the interests of justice, a particular action should be heard, they are *by no means obliged* to adhere to those time limitations." (Citations omitted; emphasis added.) *Dunham* v. *Dunham,* supra, 326–27.

The absence of an obligation enunciated by our Supreme Court in *Dunham,* however, does not imply that a court *cannot* apply the statute of limitations of the legal claim to the equitable claim. Furthermore, "[w]here a party seeks equitable relief pursuant to a cause of action that would also allow that party to seek legal relief, concurrent legal and equitable jurisdiction exists, and the statute of limitations that would be applicable to bar the legal claim also applies to bar the

equitable claim." *Dowling* v. *Finley Associates, Inc.*, 49 Conn. App. 330, 335, 714 A.2d 694 (1998), rev'd on other grounds, 248 Conn. 364, 727 A.2d 1245 (1999). Because the plaintiff's claims of resulting and constructive trusts are based on the same set of facts as the legal claim of express trust, the six year statute of limitations, if applicable to the legal claim, equally applies to the equitable claims. Due to the plaintiff's failure to file the complaint within the statutory period, and the inapplicability of the doctrine of equitable tolling; see part I; the plaintiff's claim thus fails.

## III

Last, the plaintiff argues that the court improperly rendered summary judgment on his conversion claim. The plaintiff alleged in his complaint that "[t]he defendant by and through her agents wrongfully entered on [the plaintiff's] property without authority and unlawfully dug up and removed sand, stone, gravel and topsoil in the approximate amount of 500,000 cubic yards of a value of more than $2,000,000." Because, as the plaintiff concedes, an essential element of conversion is proof of an immediate right to possession at the time of conversion; see, e.g., *Macomber* v. *Travelers Property & Casualty Corp.*, 261 Conn. 620, 649, 804 A.2d 180 (2002) (our Supreme Court has "defined conversion as [a]n unauthorized assumption and exercise of the right of ownership over *goods belonging to another*, to the exclusion of the owner's rights" [emphasis added; internal quotation marks omitted]); the rendering of summary judgment on the first three counts forecloses the plaintiff's right to prevail on this count. Therefore, the plaintiff's final claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.